1

2

3

4

5

6

7

8    **IN THE UNITED STATES DISTRICT COURT**

9    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   CHERYL LYNN JAGER,                      No.  2:17-CV-2141-TLN-DMC

12                    Plaintiff,

13        v.                                 <u>FINDINGS AND RECOMMENDATIONS</u>

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                     Defendant.
16

17

18            Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20   Pending before the court are the parties' brief on the merits (Docs. 13, 14, 17, and 18).[1]

21            The court reviews the Commissioner's final decision to determine whether it is:

22   (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

23   whole.  <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

24   more than a mere scintilla, but less than a preponderance.  <u>See</u> <u>Saelee v. Chater</u>, 94 F.3d 520, 521

25   (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

26   a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971).  The record as a whole,

27   ───────────────
           [1]        Plaintiff filed her opening brief on June 4, 2018 (Doc. 13).  On June 6, 2018,
28   plaintiff filed an amended opening brief (Doc. 14) superseding the original brief.  Thus, this
     action proceeds on plaintiff's amended opening brief filed on June 6, 2018.

including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the court recommends the matter be remanded for further proceedings.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).  The sequential evaluation proceeds as follows:

| | |
|---|---|
| Step 1 | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |

/ / /

2

| | | |
|---|---|---|
| Step 4 | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

# II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on August 29, 2014.  See CAR 25.[2]  In the application, plaintiff claims disability began on January 26, 2013.  See id.  In her amended brief, plaintiff alleges disability due to "due to hypothyroidism, agoraphobia, fatigue, anxiety, and depression."  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on August 22, 2015, before Administrative Law Judge (ALJ) Plauche F. Villere, Jr.  In an October 24, 2016, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): major depressive disorder and anxiety disorder with panic attacks;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity:  a full range of work at all exertional levels; claimant can perform simple, repetitive tasks involving occasional interaction with the public; and

4. Considering the claimant's age, education, work experience, residual functional capacity, and the Medical-Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 27-37.

After the Appeals Council declined review on September 15, 2017, this appeal followed.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[2]    Citations are the to the Certified Administrative Record (CAR) lodged on April 19, 2018 (Doc. 12).

# III. DISCUSSION

In her amended opening brief, plaintiff argues: (1) the ALJ erred in finding her back impairment not severe;[3] (2) the ALJ erred in evaluating the medical opinions of examining psychologist Dr. Bacheler; (3) the ALJ erred with respect to assessing plaintiff's credibility; and (4) the ALJ erred by not obtaining vocational expert testimony in lieu of applying the Medical-Vocational Guidelines.

## A.    **Back Impairment**

### 1.    The ALJ's Analysis

At Step 2, the ALJ evaluated the severity of plaintiff's various impairments and determined she has no physical impairments. See CAR 27-30. Regarding plaintiff's back impairment, the ALJ stated:

> On January 14, 2016, the claimant presented to care with complaints of back pain. Physical examination revealed decreased range of motion and the claimant was placed on gabapentin for a lumbar strain. (Ex. 11F/2-3).

> Id. at 27.

Discussing plaintiff's back pain and obesity in conjunction, the ALJ added:

> The claimant's back pain and obesity are also not severe. Progress notes from Sierra Family Medical Clinic as early as February 2014 show that the claimant reported that she hiked and walked her dogs four times per week. (Ex. 3F/13, 29). Physical examinations have often shown that the claimant presented with no abnormalities and she ambulated with a coordinated gait. (Ex. 3F/21, 26; 5F/43; 7F/21; 8F/35). While the claimant has registered an obese body mass index (Ex. 8F/26) under Social Security Ruling 02-1p, her treatment for obesity has been limited to suggestions that she exercise and diet. (Ex. 8F/24; 11F/26). By July 15, 2014, the claimant reported that had "much relief" with marijuana. (Ex. 3F/20). By September 2, 2014, the claimant reported that her pain was "managed well." (Ex. 3F/14).

> Admittedly, progress notes in 2016 show that the claimant presented with tenderness about the right SI joint, paraspinal muscle spasms on the right, and decreased lumbar spine range of motion. (Ex. 11F/11, 15, 19, 27). However, subsequent physical examinations show that the claimant's back pain was of an "unspecified chronicity" (Ex. 11F/12, 28) and there is no documentation that the claimant followed through with a May 9, 2016, spinal x-ray referral. (Ex. 11F/27). In fact, May 9, 2016, progress notes

---

[3]    Plaintiff does not challenge the ALJ's findings her obesity, right hand impairment, left foot/ankle impairment, right index finger cellulitis, GERD, hypertension, and asthma are not severe impairments.

5

state that the claimant reported that her medications were "effective in controlling her pain." (Ex. 11F/27).

CAR 28.

### 2. Plaintiff's Contentions

According to plaintiff:

> In finding that Ms. Jager has no physical impairments, the ALJ stated "[w]ith the lack of any related complications or specialized treatment for an ongoing period, the claimant's physical impairments do not constitute severe impairments that could reasonably cause any more than minimal limitations." (Tr. 29). The ALJ has applied an incorrect legal standard, as there is no requirement that an impairment result in "complications" or that a claimant undergo "specialized treatment for an ongoing period" in order for an impairment to be considered severe within the meaning of the Social Security regulations. Moreover, the record, in fact, includes objective evidence supporting Ms. Jager's complaints of back pain. Additionally, the new evidence submitted to the Appeals Council includes laboratory findings in the form of x-rays which further confirms that Ms. Jager's back impairment is more than a "slight abnormality."

In support of her contentions, plaintiff argues "[t]he objective evidence before the ALJ supports Ms. Jager's complaints of back pain." Plaintiff also claims new evidence submitted to the Appeals Council ". . .further supports a finding that Ms. Jager's back pain is a severe impairment."[4]

### 3. Applicable Legal Standards

To qualify for benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).[5] In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment

---

[4] As plaintiff notes, this evidence was rejected by the Appeals Council because it described plaintiff's condition after the date of the ALJ's decision and, therefore, was not relevant to the current application.

[5] Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521, 416.921.

alone would be sufficiently severe.  See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996);

see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment, or

combination of impairments, can only be found to be non-severe if the evidence establishes a

slight abnormality that has no more than a minimal effect on an individual's ability to work.  See

Social Security Ruling (SSR) 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.

1988) (adopting SSR 85-28).  The plaintiff has the burden of establishing the severity of the

impairment by providing medical evidence consisting of signs, symptoms, and laboratory

findings.  See 20 C.F.R. §§ 404.1508, 416.908.  The plaintiff's own statement of symptoms alone

is insufficient.  See id.

### 4.    Disposition

At the outset, it appears plaintiff misstates the ALJ's rationale.  According to

plaintiff, the ALJ's exclusive rationale supporting his severity determination is a lack of related

complications or specialized treatment.  This is inaccurate.  As to plaintiff's back pain the ALJ

also cited plaintiff's activities of daily living.  In particular, the ALJ determined plaintiff's back

pain was not a severe impairment primarily because the evidence showed she was hiking and

walking her dogs four times per week despite back pain.  This evidence – which plaintiff does not

contest – supports the ALJ's severity determination because it shows plaintiff's back pain has no

effect, let alone more than a minimal effect, on her ability to perform work-related activities, such

as walking.  See SSR 85-28; see also Yuckert, 841 F.2d 306.

As to new evidence submitted to the Appeals Council, the new evidence consists

of diagnostic imaging evidence obtained after the date of the hearing decision.  See Doc. 14-1

(Exhibit 1 to plaintiff's amended motion for summary judgment).  The Appeals Council properly

rejected this evidence.  See Sanchez v. Secretary of Health and Human Services, 812 F.2d 509,

511-12 (9th Cir. 1987).  In Sanchez, the court concluded the new evidence in question was not

material because it indicated "at most, mental deterioration after the hearing, which would be

material to a new application, but not probative of his condition at the hearing."  Id. at 512 (citing

Ward v. Schweiker, 686 F.2d 762, 765-66 (9th Cir. 1982)).

/ / /

**B.**     **Dr. Bacheler's Opinions**

1.     The ALJ's Analysis

At Step 4, the ALJ evaluated the medical opinions of record to determine plaintiff's residual functional capacity. See CAR 31-36. The ALJ gave "great weight" to the opinions of agency reviewing physicians, Drs. Rudnick and Franco, who opined plaintiff can understand and remember three-step instructions, she can persist, attend, and maintain an acceptable pace for a normal work schedule, she can accept supervision and engage in limited work task[s] related to interpersonal interactions with the general public, plaintiff can adapt to expectable workplace changes, and she would do best in a lower stress work environment. See id at 33.

As to Dr. Bacheler, who performed a consultative examination, the ALJ stated:

> Consultative psychologist Janet Bacheler, Ph.D., examined the claimant on November 12, 2014, and stated that the claimant demonstrated cooperative and pleasant attitude, full orientation, fair concentration, fair memory, intact abstractions, intact judgment and insight, and linear thought process. Dr. Bacheler noted that the claimant presented with a poor attention span with backwards serial 3 calculations, a tearful mood, and suicidal thoughts due to her brother's then-recent suicide, and a thought content of victim-like themes. (Ex. 4F/5-6).
>
> Dr. Bacheler gave the claimant a Global Assessment of Functioning score of 60 and opined that the claimant is moderately limited in: performing detailed and complex tasks versus simple and repetitive tasks; maintaining regular workplace attendance; performing work activities on a consistent basis; completing a normal workday or workweek without psychiatric interruptions; interacting with coworkers and the public; and dealing with the usual stresses encountered in a competitive work environment. Dr. Bacheler opined that the claimant is midly to moderately limited in performing work activities without special or additional supervision, as well as in accepting instructions from supervisors. (Ex. 4F/7-8).
>
> While Drs. Rudnick and Franco stated that they gave Dr. Bacheler's opinion great weight (Ex. 1A/11; 3A/9), the undersigned give Dr. Bacheler's opinion little weight. Dr. Bacheler did not have the benefit of a review of any of the claimant's treatment records prior to making her opinion. (Ex. 4F/3). This is a material deficiency, as Dr. Bacheler did not account for the claimant's responses to medical as well as periods of medication non-compliance and substance abuse issues, as discussed at length above.
>
> In fact, Dr. Bacheler's November 12, 2014, opinion was based on a somewhat inaccurate diagnosis of amphetamine abuse in remission (Ex. 4F/7), yet she did not account for the claimant's positive methamphetamine screen two days later on November 14, 2014 (Ex.

8

5F/4), presumably based on the fact that she did not review any of the claimant's treatment records (Ex. 4F/3).

Accordingly, the undersigned gives Dr. Bacheler's opinion little weight.

Id. at 34.

2.    Plaintiff's Contentions

Plaintiff argues:

> . . . The ALJ's finding that Dr. Bacheler did "not have the benefit of a review of any of the claimant's treatment records prior to making her opinion," which he found was a "material deficiency," was based on a misreading of the report. (Tr. 34). In fact, Dr. Bacheler specifically stated in her report that she had reviewed "[a]n SSA-1994/vendor questions form, and SSA-3368 and 2014 medical records from Sierra Family Medical Clinic" and "a functional report from A. Fingerson, PAC that Claimant provided." (Tr. 340). The 2014 Sierra Family Medical Clinic records to which Dr. Bacheler referred are contained in the record before the ALJ as Exhibit 3F, and are dated from February 8, 2013 through September 22, 2014. (Tr. 280-337).
> Indeed, the ALJ relied on these records, in part, in asserting that the claimant's "most serious complaints have coincided with substance abuse issues and medication compliance issues." (Tr. 32) (citing Exhibit 3F/41, 3F/38, 3F/26, 3F/9, as well as more recent records, dated after Dr. Bacheler's evaluation). Thus, contrary to the ALJ's findings, Dr. Bacheler was aware of Ms. Jager's substance abuse issues as she referenced the Sierra Family Clinic records addressing her methamphetamine use and was aware that Ms. Jager had a marijuana prescription as the list of diagnoses included "Amphetamine abuse, (reportedly) in remission" and "Rule out cannabis abuse." (Tr. 341, 342, 344). Dr. Bacheler opined that Ms. Jager may not only benefit from a psychotropic medication evaluation with a psychiatrist and increasing her psychotherapy sessions, but also "from engaging in a 12-step program (e.g. NA) in light of her admitted use methamphetamine as recently as September." (Tr. 344).
> The ALJ also claimed that Dr. Bacheler's opinion was "based on a somewhat inaccurate diagnosis of amphetamine abuse in remission" which "presumably based on the fact that she did not review any of the claimant's treatment records" and was unaware of a positive drug screen two days after her report. (Tr. 34). However, as noted, Dr. Bacheler reviewed treatment records and, contrary to the ALJ's findings, actually diagnosed "Amphetamine abuse (reportedly) in remission"; not Amphetamine abuse in remission, as the ALJ claimed. Compare (Tr. 34) with (Tr. 344). Thus, it is apparent that Dr. Bacheler was well aware of Ms. Jager's substance abuse history which is reflected in her report, contrary to the ALJ's findings. The ALJ's reasons for according "little weight" to her report cannot be sustained.

///

///

///

9

Plaintiff contends the opinion of treating physician, Dr. Van Houten, supports Dr. Bachelor's conclusions.[6]

### 3.    Applicable Legal Standards

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not explicitly rejecting a medical opinion.  See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another.  See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  Social workers are not considered an acceptable medical source.  See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants also are not acceptable medical sources.  See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016).  Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so.  See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the

/ / /

_____

[6]    The ALJ gave Dr. Van Houten's opinions little weight, a finding plaintiff does not challenge.

opinion of a non-examining professional. <u>See</u> <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. <u>See</u> <u>Lester</u>, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. <u>See</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. <u>See</u> <u>Lester</u>, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. <u>See</u> <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. <u>See</u> <u>Lester</u>, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. <u>See</u> <u>id.</u> at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. <u>See</u> <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); <u>see also</u> <u>Magallanes</u>, 881 F.2d at 751.

4.      <u>Disposition</u>

Dr. Bacheler conducted an examination on November 12, 2014, and submitted her report. <u>See</u> CAR 340-345 (Exhibit 4F). The doctor opined plaintiff has mild to moderate mental limitations. <u>See</u> <u>id.</u> at 344-345. The ALJ rejected Dr. Bacheler's opinions because she did not have the benefit of a complete review of "<u>any</u> of the claimant's treatment records prior to making

11

her opinion," and because Dr. Bacheler's opinion "was based on a somewhat inaccurate diagnosis of amphetamine abuse in remission." CAR 34 (emphasis added). Plaintiff argues neither reason is supported by substantial evidence.

The court agrees. As reflected in Dr. Bacheler's report, the doctor reviewed the treatment records. See id. at 340. The doctor was also aware of plaintiff's substance abuse. See id. at 342. As to Dr. Bacheler's diagnoses, the doctor diagnosed "Aphetamine abuse, (reportedly) in remission." The court finds this diagnosis is in fact supported by the record, contrary to the ALJ's finding. Specifically, the doctor noted the diagnosis was based on plaintiff's report of remission, not the actual fact of remission.

Citing Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007), and 42 C.F.R. § 404.1520a, defendant argues any error is harmless because even moderate mental limitations are not considered severe. Defendant's argument is misplaced because it conflates the analysis at Step 2 with the analysis at Step 4 challenged here. The authority cited by defendant applies to the ALJ's determination at Step 2 whether a moderate mental impairment is severe. If the court were to accept defendant's argument that even moderate mental impairments are also inconsequential at Step 4, such a holding would mean moderate mental impairments are never debilitating and essentially eliminate any analysis at Step 4 or Step 5 regarding mental impairments except those found to be marked or extreme.

While the court recognizes that the ALJ's ultimate disability determination may very well be the same upon proper consideration of Dr. Bacheler's opinions, the court must nonetheless insist upon compliance with the applicable rules regarding evaluation of medical opinions. This case should be remanded for further consideration of Dr. Bacheler's opinions because the reasoning provided by the ALJ for rejecting them are not sound and the ALJ provided no alternative analysis as to this source.[7]

/ / /

/ / /

_____

[7] In this regard, the court finds it interesting the ALJ did not credit Dr. Bacheler's opinions while recognizing Drs. Rudnick and Franco did. See CAR 34.

12

## C.    Credibility

### 1.    The ALJ's Analysis

At Step 4, the ALJ evaluated the credibility of plaintiff's statements and testimony in determining residual functional capacity.  See CAR 31-33.  The ALJ stated:

> At hearing, the claimant testified that she has depression, anxiety, and fatigue.  While her medications offer some relief for anxiety, she continues to be depressed.  She isolates herself and she does not like to go out in public.  She has had days about four times per week when she does not leave her house.

> The claimant made similar allegations in her disability reports and added that her depression and anxiety are easily triggered.  She has poor sleep.  She must be reminded to take medication.  She is no longer social.  She could pay attention for 10 to 15 minutes.  She has difficulty following instructions as well as handling stress and changes in routine.  (Ex. 2E, 3E, 6E, 9E).

> However, the claimant's allegations are not entirely consistent with clinical indications that show that she is otherwise functional.  For example, progress notes from Sierra Family Medical Center often show that the claimant demonstrated mental status examination findings including "mild" depressed affect and anxiety, and full orientation with coherency and focus.  (citations omitted).  During a September 22, 2014, behavioral health visit, the claimant demonstrated normal attitude and cooperation, normal thought processes, normal thought perceptions despite stating that she sometimes sees a shadow walking by, and no cognitive functioning or sensorium issues.  (Ex. 3F/10-11).

> By February 12, 2014, the claimant was told to take a lower dose of Prozac to test its sufficiency, (Ex. 3F/10), as she stated she was "[d]oing fine without Prozac."  By September 2, 2014, the claimant reported that alprazolam worked for her anxiety.  (Ex. 3F/14).  By December 8, 2014, the claimant reported that she no longer had panic or anxiety attacks and that her crying spells decreased in frequency.  (Ex. 5F/18).  By December 15, 2014, the claimant reported that her depression and anxiety were stable.  (Ex. 5F/10).  By February 23, 2015, the claimant declined a refill on alprazolam for anxiety because she was "cutting back" with a lower dosage and had fewer anxiety attacks.  (Ex. 7F/14).  By March 23, 2015, the claimant reported that she was doing well with her depression (Ex. 7F/22) and her medication was helpful (Ex. 7F/20).  By April 20, 2015, the claimant reported that her anxiety was situational due to an upcoming jail sentence.  (Ex. 7F/24).  By June 26, 2015, the claimant reported that she had mild anxiety that was managed well with medication.  (Ex. 7F/37).  By August 7, 2015, the claimant reported being more emotionally stable with a better mood.  (Ex. 8F/8).  By September 14, 2015, the claimant reported that medication seemed to mitigate her insomnia.  (Ex. 8F/20).

/ / /

/ / /

In fact, the claimant's most serious complaints have coincided with substance abuse issues and medication compliance issues. For example, when the claimant reported increased symptoms during a February 8, 2013, visit, she also reported that she relapsed on methamphetamines the month prior and was arrested for being under the influence. (Ex. 3F/41). The claimant also reported that she was out of Prozac and Xanax since "last summer." (Ex. 3F/41). After restarting medication, the claimant stated that she was smoking marijuana to help with her anxiety. (Ex. 3F/38). On March 26, 2014, the claimant was advised that she must take fluoxetine daily at an effective dose to decrease her anxiety. (Ex. 3F/26). When the claimant attended a behavioral health visit on September 22, 2014, with increased symptoms, she reported that she used meth one month prior and she smoked marijuana. (Ex. 3F/9). The claimant tested positive for methamphetamines and marijuana during a November 2014 urine screen. (Ex. 5F/14). On October 24, 2014, the claimant reported that she was concerned because she stopped taking Prozac. (Ex. 5F/37). After resuming medications, the claimant reported the following month that her "medications are starting to work," she was no longer paranoid, and she did not need recognition of how well she was doing, stating, "I know." (Ex. 5F/22-23). On January 22, 2015, the claimant reported increased depression when she discontinued Prozac. (Ex. 7F/3). A February 2, 2015, progress note shows that the claimant again reported trouble with "being clean" from methamphetamine when she had increased anxiety. (Ex. 7F/7). On September 14, 2015, the claimant reported feeling unstable and that she was using marijuana and not taking medications "for a couple days." (Ex. 8F/19).

Notably, a May 11, 2015, progress note shows that the claimant reported improvement and that she was clean and slowly cutting back on marijuana usage to weekends only. (Ex. 7F/30).

A recent progress note dated April 22, 2016, shows that the claimant reported increased depression and she "admits she has not been taking her medication as prescribed." (Ex. 11F/17).

Accordingly, the claimant's allegations are not entirely consistent with the evidence.

CAR 31-33.

2.      Plaintiff's Contentions

According to plaintiff:

        . . .Here, the ALJ failed to comply with SSR 16-3p in focusing on inconsistencies in Ms. Jager's symtoms [sic] over time, while failing to recognize that symptoms may worsen and improve with time, and that "inconsistencies in an individual's statments [sic] made at vatying [sic] times does not necessarily mean they are inaccurate." SSR 16-3p. For example, the ALJ claimed that Ms. Jager's "allegations are not entirely consistent with clinical indications that show that she is otherwise

/ / /

/ / /

14

functional." (Tr. 32). In support the ALJ stated:

> For example, progress notes from Sierra Family Medical Center often show that the claimant demonstrated mental status examination findings including "mild" depressed affect and anxiety, and full orientation with coherency and focus. . . . During a September 22, 2014 behavioral health visit, the claimant demonstrated normal attitude and corporation, normal thought process, normal thought perceptions despite stating she sometimes sees a shadow walking by, and no cognition functioning or sensorium.

*Id.* These findings are based on a selective citation to the record.

In fact, the records from Sierra Family Practice do not consistently document merely mild depressed affect and anxiety as the ALJ claimed. For example, a July 9, 2013 note indicated that Ms. Jager was "very anxious. Depressed. Fatigued. Gets panic attacks. Social phobia - hard to be out in public." (Tr. 313). She was in "mild distress and emotional," with depressed affect and anxious. (Tr. 313-14). On July 15, 2014, she complained "of feeling hopeless and depressed" with "little interest in doing things" and "crying spells." (Tr. 300). Findings on exam of "mildly anxious" with the assessment that she "may be a candidate for increase in dosage of antidepressant or augment to Ambilify" and Alprazolam as needed for panic attacks. (Tr. 300-01).

A September 2, 2014 note states:

> Ms. Jager is a 48 y/o female, established pt returning to clinic with disability paperwork related to her mood, specifically debilitating depression and anxiety. . . Previous disability was established due to her emotional lability and overwhelming depression and anxiety despite medications and counseling. Pt admits to feeling down, frequent crying spells, difficulty concentrating, finding less pleasure in activities she typically enjoys, as well as fatigue. Tried to taper of[f] depression meds, made it a year and half before starting again. Requesting an additional medication or dose increase as she feels symptoms are worse than before. . . . Estimates she can work 5-7 days out of the month as a caregiver if her back was not painful. . . . States no difference on Prozac at 20mg. Increased dose to 40mg past 2-3 weeks with decrease in crying episodes. . . . Tried OTC and alprazolam which works for anxiety, but no affect [sic] on depression. Will increase fluoxetine from 40 to 60mg. . . .

(Tr. 293). On examination, she was "mildly anxious, emotional, dysphoric." (Tr. 294).

Moreover, the ALJ has misstated the September 22, 2014 note which he claimed "demonstrated normal attitude and cooperation, normal thought process, normal thought perceptions despite stating she sometimes sees a shadow walking by, and no cognition functioning or sensorium." (Tr.

///

15

32). However this note actually states that:

> **Depression as evidenced by either depressed mood or loss of interest or pleasure lasting [greater than] 2 weeks**. The patient complains of depressed mood, decreased interest, significant weight loss/decreased appetite, insomnia/hypersomnia, psychomotor agitation/retardation, decreased energy/fatigue, excessive guilt/worthlessness, poor concentration or indecisiveness.
> **Anxiety Disorder**: The patient complains of excessive worry for [greater than] 6 months, inability to control worry, restlessness, easily fatigued, poor concentration or mind goes blank, irritability, muscle tension, sleep disturbance.

(Tr. 289). On mental status examination, Ms. Jager presented with an "unkempt appearance," auditory hallucinations, noting "'Sometimes I think I see a shadow walking by'"; mood was "sad, depressed" with fair insight/judgement; assessment was depression, anxiety and panic attacks. (Tr. 289-90). The ALJ has left out key findings from this note, which does not reflect normal findings.

The ALJ also failed to comply with SSR 16-3p in seeking to discredit Ms. Jager's overall character by repeatedly focusing on her "substance abuse issues" and her use of medical marijuana (which was prescribed by her doctor)⁹ and then by attacking the credibility of the consultative psychologist and the treating medical providers, in part, for not referencing these "substance abuse issues." (Tr. 32-35). However, SSR 16-3p cautions not to "assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation."

Moreover, while the record references a few occasions when Ms. Jager had a relapse or did not take her medications, as Ms. Jager herself acknowledged, this was, at times, due to insurance issues. The office notes variously document Ms. Jager's symptoms and complaints involving: insurance problems regarding getting her medications; exacerbations of anxiety and depression; panic attacks; severe GERD symptoms; sleep problems; mood destabilization; crying spells; difficulty with ADLs; sweats; and bad dreams. (Tr. 405, 406, 410, 416, 422, 423, 426-28, 432, 439, 440, 447, 452-54, 463-64, 468, 474-76, 478-79). While at times she was doing better, as the ALJ noted, overall, any such improvement was not sustained, notwithstanding medication compliance. (Tr. 32). Indeed, Dr. Scarmon reported on May 9, 2016, that "[s]he has chronic depression which is not well controlled with fluoxstine and buspirone 10 mg." (Tr. 514).

3.      Applicable Legal Standards

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

16

F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given

17

1  impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

2  Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

3               4.      Disposition

4          If drug or alcohol use is a contributing factor material to a determination of

5  disability, an individual is not entitled to benefits.  See 20 C.F.R. §§ 404.1535 and 416.945; see

6  also Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998).  The burden is on the plaintiff to

7  demonstrate that drug and alcohol addiction is not a material factor by showing that an

8  impairment would have been disabling even if drug and alcohol use ceased.  See Parra v. Astrue,

9  481 F.3d 742, 748 (9th Cir. 2007).  To do so, the plaintiff would have to demonstrate that the

10  impairment ". . . would remain during periods when she stopped using drugs and alcohol."  See

11  Ball v. Massanari, 254 F.3d 817, 821 (9th Cir. 2001) (citing Sousa, 143 F.3d at 1245).

12          The ALJ discounted plaintiff's credibility because her statements and testimony

13  were inconsistent with evidence, specifically evidence that plaintiff's condition, well-controlled

14  with use of prescribed medications, only worsened at times when plaintiff chose to use illicit

15  drugs instead of her prescribed medications.  See CAR 32-33.  Given the evidence of record

16  clearly demonstrating plaintiff has a problem with illicit drug abuse, the court finds the ALJ did

17  not err in this regard in assessing plaintiff's credibility.  Moreover, the ALJ properly considered

18  plaintiff's non-compliance with medication, particularly in the context of instances when plaintiff

19  abused illicit drugs.  See Smolen, 80 F.3d at 1284.

20          The court does not agree with plaintiff the ALJ violated Social Security Ruling 16-

21  3p by applying an adversarial standard to assess plaintiff's credibility in light of her use of illicit

22  drugs.  The ALJ did not discount plaintiff's credibility based on the mere fact of drug abuse,

23  which could violate the ruling.  To the contrary, as discussed above, the ALJ discussed drug

24  abuse in the context of finding the evidence shows plaintiff's condition was well-controlled

25  during times of compliance with prescribed medications.

26  / / /

27  / / /

28  / / /

### D. Application of the Medical-Vocational Guidelines

At Step 5, the ALJ applied the Medical-Vocational Guidelines in lieu of obtaining vocational expert testimony to determine plaintiff is not disabled. See CAR 36-37. The ALJ stated:

> Considering the claimant's medical and vocational profile, Medical-Vocational Rule 204.00 applies. Under a framework analysis of this Rule, the Social Security Rulings provide guidance on the impact of the claimant's limitations upon the unskilled occupational base. Specifically, Social Security Ruling 85-15 states:
>
> . . .the final consideration is whether the person can be expected to perform unskilled work. The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervisors, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.
>
> As stated in Finding 4 above, the claimant's limitations in performing simple, repetitive tasks (i.e., unskilled work) allow for occasional interactions with the public. Under Social Security Ruling 85-15, most unskilled jobs only require the worker to interact with supervisors and coworkers. Social Security Ruling 85-15 does not indicate that most unskilled jobs to interact with the public; and even so, the claimant is capable of interacting occasionally with the public. Therefore, the claimant's limitations would not significantly erode the unskilled occupational base.

Id. at 36.

Plaintiff argues:

> The ALJ committed reversible error in not obtaining VE testimony given his finding that Ms. Jager's mental impairments of major depressive disorder and anxiety disorder with panic attacks result in moderate difficulties in maintaining social functioning and in maintaining concentration, persistence and pace. (Tr. 27, 31). The ALJ further erred by not soliciting VE testimony to support his finding that the Ms. Jager's "limitations would not significantly erode the unskilled occupational base." (Tr. 36). In other words, there is no evidence that the Administration has produced to show work exists in significant numbers in the national economy that Ms. Jager could perform. VE testimony was also required to testify regarding the impact of the mental limitations found by Dr. Bacheler, whose opinion was not properly credited, on the ability to perform other work. See pages 17-22, supra.

/ / /

/ / /

19

3. <u>Disposition</u>

To the extent re-evaluation of Dr. Bacheler's opinions might change the ALJ's residual functional capacity determination in this case, the court cannot say the current Step 5 vocational analysis is free of defect. Specifically, the hypothetical questions posed to the vocational expert and the answers to which the ALJ relied, might not accurately reflect plaintiff's residual functional capacity taking into account a proper evaluation of the moderate mental limitations opined by Dr. Bacheler. For this reason, a remand is warranted regardless of the court's opinion of the ALJ's current vocational findings, as to which the court expresses no opinion.

# IV. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Plaintiff's motion for summary judgment (Doc. 14) be granted;

2. Defendant's cross-motion for summary judgment (Doc. 17) be denied; and

3. The Commissioner's final decision be reversed and this matter be remanded for further proceedings consistent with these findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. <u>See Martinez v. Ylst,</u> 951 F.2d 1153 (9th Cir. 1991).


Dated: January 10, 2019

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE